UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT OF MICHIGAN

ELIZABETH GAYLE,

    Plaintiff,

v.

BENTON HARBOR AREA SCHOOLS;
BENTON HARBOR AREA BOARD OF EDUCATION;
KELVIN BUTTS, in his individual and official capacity;
DASHUNA ROBINSON, in her individual and official capacity;
TRENTON BOWENS, in his individual and official capacity;
REINALDO TRIPPLETT, in his individual and official capacity;
ANGEL CRAYTON, in her individual and official capacity;
ANGELA DOYLE; in her individual and official capacity;
ELNORA GAVIN, in her individual and official capacity;
STEPHANIE ROCKETTE-MARTIN, in her individual and official capacity;
MATTHEW BRADLEY, in his individual and official capacity;
LUE BUCHANA, in her individual and official capacity,

    Defendants.

Case No. 1:23-cv-01340
Hon.

---

Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626

---

**COMPLAINT AND JURY DEMAND**

1

# INTRODUCTION

NOW COMES Ms. Elizabeth Gayle, by and through her attorney, Eric Delaporte of Delaporte Lynch, PLLC, and files her Complaint against Defendants for breach of her employment contract; discrimination; retaliatory termination in violation of public policy; whistleblower retaliation; and violations of the Payment of Wages and Fringe Benefits Act, Family Medical Leave Act (FMLA), Persons with Disabilities Civil Rights Act (PWDCRA), Elliott-Larsen Civil Rights Act (ELCRA), First Amendment, and Ms. Gayle's Constitutional Liberty Interest in her Good Name.

# JURISDICTION AND VENUE

1. Benton Harbor Area Schools (hereinafter, "BHAS," or "BHAS"), is a public school district situated entirely in Berrien County, Michigan, in this Honorable Court's territorial jurisdiction.

2. Benton Harbor Area Board Of Education (hereinafter, "Board of Education," or the "Board"), is a local governmental entity situated entirely in Berrien County, Michigan, in this Honorable Court's territorial jurisdiction.

3. Kelvin Butts (hereinafter, the "Superintendent" or "Defendant Superintendent"), is the Superintendent of Benton Harbor Area Schools and an individual.

4. Dashuna Robinson (hereinafter, "President Robinson" or "Defendant Robinson"), is the President of the BHAS Board of Education and an individual.

5. Trenton Bowens (hereinafter, "Vice President Bowens" or "Defendant Bowens"), is the Vice President of the BHAS Board of Education and an individual.

6. Reinaldo Tripplett (hereinafter, "Secretary Tripplett" or "Defendant Tripplett"), is the Secretary of the BHAS Board of Education and an individual.

7. Angel Crayton (hereinafter, "Treasurer Crayton" or "Defendant Crayton"), is the Treasurer of the BHAS Board of Education and an individual.

8. Angela Doyle (hereinafter, "Trustee Doyle" or "Defendant Doyle"), is a Trustee for the BHAS Board of Education and an individual.

9. Elnora Gavin (hereinafter, "Trustee Gavin" or "Defendant Gavin"), is a Trustee for the BHAS Board of Education and an individual.

10. Stephanie Rockette-Martin (hereinafter, "Trustee Rockette-Martin" or "Defendant Rockette-Martin"), is a Trustee for the BHAS Board of Education and an individual.

11. Matthew Bradley (hereinafter, "Former Trustee Bradley" or "Defendant Bradley"), was a Trustee for the BHAS Board of Education in 2021 and is an individual.

12. Lue Buchana (hereinafter, "Former Trustee Buchana" or "Defendant Buchana"), was a Trustee for the BHAS Board of Education in 2021 and is an individual.

13. All of the acts complained herein occurred within the boundaries of this Honorable Court's territorial jurisdiction.

14. Thus, legal jurisdiction and venue is proper in this Honorable Court.

**GENERAL ALLEGATIONS**

15. Ms. Gayle was a highly competent and well-liked Chief Human Resources Officer at BHAS administrator employed with the District from July 1, 2020, until September 27, 2023.

16. Throughout her employment with Benton Harbor Area Schools, Ms. Gayle suffered persistent workplace harassment, including race discrimination, national origin discrimination, retaliation, and violations of her constitutional liberty interest in her good name.

3

17. Specific instances of harassment included, but were not limited to, the issuance of an unwarranted, retaliatory, reprimand (citing no policy or law violation); publicly boasting about Ms. Gayle's disciplinary letter; treating Ms. Gayle differently than other colleagues based on her race; the Superintendent making fun of her accent on multiple occasions in front of witnesses; failing to acknowledge or respond to her whistleblower complaint; failing to take action on Ms. Gayle's formal complaint involving verbal assault; harassing Ms. Gayle by falsely alleging "complaints" against her, yet refusing to provide any details on the complaints despite Board policy requiring that information be shared within 2-days; public humiliation at Board meetings by Board Members and the Superintendent; retaliating against Ms. Gayle by falsely accusing her of disrespect in front of witnesses and falsely reprimanding her in order to force her to quit; urging Ms. Gayle to break Board policy; and generally spreading rumors about Ms. Gayle in retaliation for her whistleblowing activities.

18. When Ms. Gayle duly alerted the District of these issues, and the District did nothing to meaningfully address her Complaint, and instead, retaliated against Ms. Gayle for her protected activities.

19. Since January 2021, Ms. Gayle had witnessed and was a victim of harassment by Trustee Triplett and Trustee Crayton.

20. On or about August 21, 2021, Ms. Gayle formally filed a complaint against Board of Education members, for creating a hostile work environment using bullying, harassment, intimidation, public humiliation, and by violating various Board Policies.

21. BHAS failed to acknowledge Ms. Gayle's Whistleblower Complaint and rectify the wrongs detailed in her letter.

22. Over the next year, BHAS continued retaliating against Ms. Gayle by intentionally spreading rumors about her, claiming "complaints" were made against her without providing any information or details regarding the alleged complaints, publicly humiliating her at Board meetings, etc.

23. The actions by Defendants caused Ms. Gayle severe emotional distress, anxiety, and insomnia, to the point she needed to seek medical attention for critically high blood pressure, forcing her to take FMLA leave at the start of 2023.

24. Defendants were unhappy that Ms. Gayle availed herself of FMLA leave.

25. On May 29, 2023, towards the end of Ms. Gayle's FMLA leave, she sought an additional two months of leave as an accommodation under the PWDCRA and Elliott-Larsen Civil Rights Act to fully recover to the point where she could perform her job duties with or without accommodation.

26. Defendants were unhappy that Ms. Gayle availed herself of PWDCRA and Elliott-Larsen Civil Rights Act leave.

27. During Ms. Gayle's leave, Defendants sought her removal from employment.

28. Ms. Gayle, having suffered debilitating physical and mental trauma due to Defendants' continued harassment and discrimination, succumbed to Defendants' demands and pursued a negotiated resignation of her position.

29. By late June, the Board and Ms. Gayle had reached an agreement-in-principal for her resignation.

30. The agreement only lacked reduction to writing.

31. Contemporaneously, Ms. Gayle, in anticipation of losing her position, began exploring whether assuming alternative employment which lacked the triggering conditions of her position with Defendants would allow her to return to performing her job duties.

32. Ms. Gayle came to believe that she could benefit from alternative employment which lacked triggering conditions which prevented Ms. Gayle from performing work for Defendants at that time.

33. Under the impression Ms. Gayle was simply awaiting a written, signed version of the Agreement, Ms. Gayle accepted a new position at Jackson County Intermediate School District (JCISD).

34. The conditions which caused Ms. Gayle to struggle in the environment created by Defendants' unlawful harassment were not present at JCISD; nevertheless, had Defendants not sought her removal from BHAS through a negotiated separation, it was Ms. Gayle's intention to use her remaining leave to heal sufficiently from Defendants' physical and mental abuse to return to work at BHAS.

35. Defendants utilized Plaintiff's acceptance of a position with JCISD as a pretext for unlawfully terminating Ms. Gayle's position in retaliation for her protected activities (including, but not limited to, her use of FMLA leave and leave protected by the PWDCRA and Elliott-Larsen Civil Rights Act), and to remove an employee who they viewed as being the wrong race and nationality.

36. On August 30, 2023, BHAS sent Ms. Gayle a Written Notice of Complaints and Charges of Dismissal.

37. The Notice alleged Ms. Gayle violated Board policy by not informing the District she accepted a second job during her leave, claiming that she continued to "take resources" from the District, and alleging that she abandoned her job at BHAS.

38. Again, Ms. Gayle was under the legitimate expectation her employment was set to expire at the end of June, prompting her to seek a position elsewhere, and more importantly, it was a position which allowed her to work without the debilitating conditions present at BHAS.

39. Further, neither the PWDCRA/Elliott-Larsen Civil Rights Act, nor the FMLA prohibit working a second job while on disability leave. *Allison v City of Southfield*, 172 Mich App 592; 432 NW2d 369 (1988) (maintaining no statutory prohibition on supplemental employment for employee on disability leave); see also *Freelain v Vill of Oak Park*, 888 F3d 895 (CA 7, 2018) (permitting employee's request for secondary employment during disability leave).

40. In fact, the PWDCRA requires an employer provide a reasonable accommodation to qualified individuals with disabilities, unless doing so would cause "undue hardship." MCL 37.1102.

41. None of Ms. Gayle's actions have been unlawful, unethical, or in violation of Board Policy nor her Employment Contract.

42. The District did not have "just cause" to terminate Ms. Gayle. The Districts' actions were in retaliation for Ms. Gayle's use of lawful FMLA and PWDCRA/Elliott-Larsen Civil Rights Act leave and for her protected whistleblowing activities.

43. Ms. Gayle files her Complaint to rectify the pervasive wrongs of the District and encourage the District to end their unlawful practices.

## COUNT I — BREACH OF EMPLOYMENT CONTRACT

44. Plaintiff incorporates the previous paragraphs as if contained herein.

45. Plaintiff and Defendant Board of Education entered into a written agreement for Plaintiff's Employment. **Exhibit 1 – Plaintiff's Employment Contract.**

46. Paragraph 18 of Plaintiff's Employment Contract states that the Board may terminate an Administrator's employment for cause; but, only for "just cause."

47. "Just Cause" under the Agreement includes, but is not limited to moral turpitude, false statements, fraud, insubordination, incompetency, excessive absenteeism, or Administrator's material breach of the terms and conditions of the Contract. **Exhibit 1, ¶18, pg. 4.**

48. Plaintiff has performed all of her terms and conditions of the agreement up to her termination from the District.

49. Defendants cited reasons for Ms. Gayle's termination were fabricated and made in retaliation for Ms. Gayle's lawful use of FMLA and PWDCRA/Elliott-Larsen Civil Rights Act leave and for her protected whistleblower activities.

50. Defendants did not have "just cause" to terminate Plaintiff.

51. Defendants terminated Plaintiff's Employment without proper due process and in violation of the procedural requirements of Plaintiff's employment contract.

52. Because of the breach of the contract by Defendants, Plaintiff has incurred damages, including but not limited to damages to her reputation, career, and mental and physical health.

## COUNT II— PROMISORRY ESTOPPEL

53. Plaintiff incorporates the previous paragraphs as if contained herein.

54. There existed a promise made by the Defendants to the Plaintiff that they would agree to a separation agreement designed to resolve Plaintiff's claims against Defendant.

55. Defendants should reasonably have expected that the promise would induce action of a definite or substantial character on the part of the Plaintiff.

56. Defendants promised a separation agreement which would resolve all of Plaintiff's potential claims, then punished Plaintiff by terminating her employment for relying upon Defendants' promise.

57. The promise in fact produced reliance and forbearance of that nature such that the promise must be enforced to avoid injustice.

58. As a direct and proximate result of Defendants' breach of their promise, Plaintiff has been injured and damaged.

## COUNT III— VIOLATION OF THE PAYMENT OF WAGES AND FRINGE BENEFITS ACT

59. Plaintiff incorporates the previous paragraphs as if contained herein.

60. Plaintiff is an "employee" and Defendants are "employers" under the Michigan Payment of Wages and Fringe Benefits Act, MCL 408.471(c) and (d).

61. Payment for services rendered is considered "wages" under the Payment of Wages and Fringe Benefits Act, MCL 408.471(f).

62. Defendants' failure to pay Plaintiff the entire remainder of her contract violates MCL 408.475(2), which requires an employer to "immediately pay to an employee who has been discharged from employment all wages earned and due, as soon as the amount can with due diligence be determined."

63. Defendants' refusal to pay Plaintiff's wages constitutes a flagrant violation of MCL 408.488(2).

64. As a direct and proximate result off the Defendants' violation of the Payment of Wages and Fringe Benefits Act, Plaintiff has been injured and damaged.

## COUNT IV— WRONGFUL (RETALIATORY) TERMINATION
## IN VIOLATION OF PUBLIC POLICY

65. Plaintiff incorporates the previous paragraphs as if contained herein.

66. Plaintiff was employed by Defendants.

67. Plaintiff engaged in conduct protected by public policy when she reported wrongdoings and perceived violations of law to BHAS, the Superintendent, and her superiors.

68. Defendant BHAS subsequently fired Plaintiff.

69. Plaintiff's protected conduct was a substantial or motivating factor in Defendants' decision to fire Plaintiff.

70. As a direct and proximate result of wrongful (retaliatory) termination in violation of public policy, Plaintiff has been injured and damaged.

## COUNT V—WHISTLEBLOWER RETALIATION

71. Plaintiff incorporates the previous paragraphs as if contained herein.

72. As an employee of BHAS, Ms. Gayle was engaged in protected activity when she reported violations of law and policy at BHAS.

73. Defendants retaliated against Ms. Gayle after she reported violations of law and policy when Defendants terminated her employment on September 27, 2023.

74. As a result of Defendants' Whistleblower retaliation, Ms. Gayle has suffered non-economic, economic, and exemplary damages and is entitled to attorney's fees, costs, and punitive damages.

### COUNT VII—FMLA DISCRIMINATION

75. Plaintiff incorporates the previous paragraphs as if contained herein.

76. Under the FMLA, it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act. 29 U.S.C. § 2615(a)(1).

77. Further, it is unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2).

78. Defendants unlawfully retaliated against Ms. Gayle under the FMLA.

79. As a result of Defendants unlawful retaliation, Ms. Gayle suffered damages.

### COUNT VIII—PWDCRA RETALIATION

80. Plaintiff incorporates the previous paragraphs as if contained herein.

81. Under the PWDCRA, no person shall discriminate against another individual because that individual opposed a practice made unlawful under the PDCRA. MCL 37.1602.

82. It is unlawful under the PWDCRA to intimidate, threaten, or interfere with any individual in the exercise of their rights granted under the Acts. MCL 37.1602.

83. Defendants unlawfully retaliated against Ms. Gayle under the PWDCRA when it retaliated against Ms. Gayle when Defendants terminated her on September 27, 2023, because of her use of/request for a reasonable accommodation of additional leave time.

84. As a result of Defendants PWDCRA violations, Ms. Gayle suffered damages.

## COUNT IX—VIOLATIONS OF THE

## ELLIOTT-LARSEN CIVIL RIGHTS ACT

85. Plaintiff incorporates the previous paragraphs as if contained herein.

86. The Michigan Elliott-Larsen Civil Rights Act (ELCRA) prohibits retaliatory conduct by and employer (1) when an employee has made a charge of discrimination, filed a complaint of discrimination, or otherwise participated in enforcement proceedings, or (2) when an employee has opposed a violation of the statute. *Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F. Supp. 2d 718 (E.D. Mich. 2001).

87. ELCRA further makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of their race, color, religion, sex (including pregnancy, childbirth, and related conditions, sexual orientation, and gender identity), or national origin. MCL 37.2202.

88. Defendants violated the ELCRA when it retaliated against Ms. Gayle for her filing a complaint regarding discrimination against Trustees Tripplett and Crayton. The Superintendent and fellow Defendants further discriminated against Ms. Gayle by mocking her because of her racial identity, treating similar situated individuals differently than Ms. Gayle because of her race, and by discriminating against her based on her nationality.

89. As a result of Defendants violation of the Elliott-Larsen Civil Rights act, Ms. Gayle suffered damages.

## COUNT X—FIRST AMENDMENT VIOLATION

90. Plaintiff incorporates the previous paragraphs as if contained herein.

91. Under 42 U.S.C. § 1983, a person acting on behalf of the State who causes a citizen of the United States to be deprived of any rights, privileges, or immunities secured by the Constitution shall be liable to that party at law.

92. The First Amendment guarantees citizens the right to freedom of speech. U.S. Const. amend. I.

93. All of the actions taken by Defendants, or those acting on behalf of, or conspiring with, Defendants, and referred to herein, were done while acting under color of state law.

94. Defendants' wrongful acts were carried out in retaliation for Ms. Gayle exercising her right to free speech guaranteed by the Free Speech Clause of the First Amendment to the United States Constitution.

95. Defendants' wrongful acts deprived Ms. Gayle of her right to Free Speech under the First Amendment. BHAS' acts were intentional, malicious, willful, wanton, and in reckless disregard of Ms. Gayle's constitutional rights.

96. Defendants' statements damaged Ms. Gayle's livelihood.

97. As a result, Ms. Gayle has suffered non-economic, economic, and exemplary damages and is entitled to attorney's fees and costs.

## COUNT XI—VIOLATION OF FOURTEENTH AMENDMENT CONSTITUTIONAL LIBERTY INTEREST IN GOOD NAME

98. Plaintiff incorporates the previous paragraphs as if contained herein.

99. The Supreme Court has recognized that a protected liberty interest may be implicated by certain injuries to a person's reputation and good name which threaten to restrain the individual's freedom to pursue business or employment opportunities. *Chisolm v. Mich. AFSCME Council 25*, 218 F. Supp. 2d 855, 866 (E.D. Mich. 2002).

100. To establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his or her reputation that it effectively forecloses the opportunity to pursue gainful employment. *Id.*

101. Defendants' wrongful acts deprived Ms. Gayle her constitutionally protected liberty interest in her good name and prevented her from pursuing gainful employment, free of abuse, harassment, and retaliation. Defendants' actions were intentional, malicious, willful, wanton, and in reckless disregard of Ms. Gayle's constitutional rights.

102. Defendants' public false statements damaged her public reputation by painting her in a false light and disparaging her career at BHAS.

103. As a result, Ms. Gayle has suffered non-economic, economic, and exemplary damages and is entitled to attorney's fees and costs.

### COUNT XII—DECLARATORY JUDGMENT

104. Plaintiff incorporates the previous paragraphs as if contained herein.

105. Plaintiff requests that this Honorable Court determine that this controversy and allegations contained in this Complaint are not subject to Agreement Arbitration pursuant to 691.1686(2).

106. Pursuant to Ms. Gayle's employment contract, "any reasons noted in Section 18 above ("Termination by the Board") shall not be subject to the arbitration process," including termination of the employee. **Exhibit 1**, pg. 5, ¶19.

107. All counts contained herein are related to Ms. Gayle's termination, whether specifically or broadly.

### CONCLUSION

WHEREFORE, Plaintiff Elizabeth Gayle prays that this Honorable Court find in her favor and order the following:

1. Award Plaintiff an amount equal to or greater than $5,000,000 in total compensatory damages, plus incidental, consequential, punitive, and noneconomic damages; statutory penalties, interests, and costs; lost benefits; exemplary damages; treble damages; backpay; attorney's fees, costs; and any other award deemed fit.
2. Award Plaintiff her attorney fees and costs, and any penalties, pursuant to relevant statutes and law.
3. Find that Defendants breached Plaintiff's Employment Contract.
4. Find that the relationship between Plaintiff and Defendants is controlled by promissory estoppel, and that Defendants' promises, which Plaintiff reasonably relied upon to her detriment, created an enforceable obligation which Defendants failed to fulfill.
4. Find that Defendants violated the Payment of Wages and Fringe Benefits Act.
5. Find that Defendants' termination of Plaintiff was retaliatory and in violation of Public Policy.
6. Find that Defendants violated the Michigan Whistleblowers' Protection Act.
7. Find that Defendants violated the FMLA.
8. Find that Defendants violated the PWDCRA.
9. Find that Defendants violated ELCRA.
10. Find that Defendants violated Ms. Gayle's First Amendment Rights.
11. Find that Defendants violated Ms. Gayle's constitutional liberty interest in her good name.
12. Declare that the counts herein are not subject to an agreement to arbitrate.
13. Provide any other relief that this Honorable Court finds fair and just.

December 22, 2023                                   DELAPORTE LYNCH, PLLC

                                                    By: _____
                                                    Eric D. Delaporte (P69673)
                                                    210 State St., Suite B
                                                    Mason, MI 48854
                                                    (517) 999-2626
                                                    Eric@DelaporteLynch.com

UNITED STATES DISTRICT COURT

IN THE WESTERN DISTRICT OF MICHIGAN

ELIZABETH GAYLE,

    Plaintiff,

Case No. 1:23-cv-01340
Hon.

v.

BENTON HARBOR AREA SCHOOLS; et al.,

    Defendants.

---

Eric D. Delaporte (P69673)
DELAPORTE LYNCH, PLLC
Attorney for Plaintiff
210 State St., Suite B
Mason, MI 48854
(517) 999-2626

---

## JURY DEMAND

Pursuant to FRCP 38, Plaintiff Elizabeth Gayle requests that these counts incorporated herein be tried by a jury.

December 22, 2023          DELAPORTE LYNCH, PLLC

                                      By: _____
                                          Eric D. Delaporte (P69673)
                                          210 State St., Suite B
                                          Mason, MI 48854
                                          (517) 999-2626
                                          Eric@DelaporteLynch.com